# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNDER SEAL | § | |
| | § | |
| Plaintiff | § | FILED UNDER SEAL |
| | § | |
| | § | Civil Action No. |
| v. | § | |
| | § | |
| | § | |
| UNDER SEAL | § | |
| | § | |
| Defendant | § | |

## FILED UNDER SEAL

## QUI TAM COMPLAINT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* Joseph John Urban, Pharm.D., MBA | : | Civil Action No. _____ |
| | : | |
| | : | |
| | : | |
| | : | |
| Relator | : | |
| | : | |
| | : | |
| | : | |
| v. | : | FILED *IN CAMERA* AND |
| | : | UNDER SEAL |
| McKesson Corporation | : | |
| | : | JURY TRIAL DEMANDED |
| | : | |
| Defendant | : | |

## COMPLAINT

Relator Joseph John Urban Pharm.D., MBA, brings this *quit tam* action in the name of the United States of America, by and through their undersigned counsel, and hereby aver as follows:

### INTRODUCTION

This is an action brought by the Qui Tam Plaintiff, Joseph John Urban Pharm.D., MBA (referred to as "the Relator"), on behalf of the United States of America, to recover treble damages and civil penalties against the Defendant, McKesson Corporation ("McKesson," and referred to as "the Defendant,") pursuant to the *qui tam* provisions of the Civil False Claims Act, 31 U.S. C. §3729 - §3733 and principles of common law, and to recover damages under the common law theories of payment by mistake and unjust enrichment.

1

Relator Urban's action, to recover treble damages and civil penalties on behalf of the United States of America, arises out of the submission of false and fraudulent claims by the Defendant, McKesson Corporation, through Pharmaserv, their pharmacy management system, for payment of partially filled prescriptions filled for eligible recipients covered by the Medicaid, Medicare, FEHB, TRICARE and other government programs. Title 42 U.S.C. §1396 et seq.

The Defendant, McKESSON CORPORATION, one of the nation's largest drug wholesalers, through their Pharmaserv retail pharmacy management system and training protocol, knowingly submitted or caused to be submitted false or fraudulent claims for payment to the Medicaid program each time it caused the submission and a claim for the value of a full prescription but caused only a portion of the prescribed medication to be furnished to a Medicaid customer, in violation of multiple fraud and abuse laws. Defendant McKesson sold their antiquated Pharmaserv management system to its retail pharmacy clients, and deployed a company-wide training protocol to their unknowing clients, that was designed to automatically reorder medications from their own warehouse after causing pharmacies to bill Medicaid for full quantities on partially filled prescriptions. This system promoted secured payment in full of McKesson automatically generated warehouse order with Medicaid money.

McKesson developed, marketed, promoted and sold the Pharmaserv retail pharmacy practice management system to its independent retail pharmacy clients as an adjunct service to its wholesaler business. Pharmaserv, which costs approximately $700 a month, was promoted as cutting edge and "re-designed in 2014," enabled independent pharmacies to: 1) process prescriptions and partially filled prescriptions; 2) process third-party claims; 3) improve adherence to regulatory compliance and; 4) manage medication inventory levels through McKesson's automated medication ordering system. Pharmaserv was antiquated in its

functionality and complicated to use, inherently requiring in-person training, which cost $950/day, and ongoing reliance on McKesson's corporate trainers and help desk personnel. It is at the juncture of Pharmaserv's antiquated design and functionality, and McKesson's training directive on fully billing for partial-fill prescriptions, which yielded a systemic platform that facilitated thousands of false claims in over 1538 pharmacies nationwide.

McKesson's Pharmaserv pharmacy management system, and its deceptive training protocol are the fundamental components in this civil Qui Tam action on behalf the United States government and its citizens. Pharmaserv, which is marketed as cutting edge, is functionally antiquated and the accompanying training protocol, deceptive at best. More specifically, McKesson's Pharmaserv system prevents billing of partially filled prescriptions, due to use of separate outdated billing algorithms in its programming. This has lead to high rates of over-billing of government funded third-party payers such as Medicaid. In essence, when a pharmacy using the Pharmaserv system does not have sufficient quantity to fill a prescription, the system attempts to simultaneously dual bill the prescription plan for the partial amount and the remainder for a later date. This outdated approach, no longer accepted by Medicaid yields a "transaction error", (also known as a claim-rejection,) from the prescription plan.

In response to these "transaction errors", McKesson has deployed a uniform training protocol across the over 1538 pharmacies using Pharmaserv, to manually circumvent the system. McKesson, fully aware of their system's limitations, has systemically instructed their Pharmaserv training representatives to teach pharmacists the banned "full bill, 2 label method" in processing partial fills. When the full amount is not available, pharmacies are specifically and uniformly told to utilize Pharmaserv's "Bill Now" function, which submits a

prescription claim for the full quantity to third-party payers. They are then told to generate 2 prescriptions labels and partially fill the prescription with one label. Rather than provide the partial amount of medication at no charge and submit the full claim when the remainder of medication is in, pharmacies are instructed to fully charge patients for the partial fill of the medication at the cash register and use the second label as a manual reminder for the remainder.

To add injury to insult, Pharmaserv implemented a circuitous scheme that used retail pharmacies, which operated under mistake of fact, to unjustly profit. McKesson promoted a platform that automatically reordered medications from their warehouse after requiring pharmacies to bill full quantities for partially filled prescriptions. This act, completely orchestrated by McKesson, essentially paid for McKesson wholesale order with government funds prior to the full amount of medications being dispensed to patients. Moreover, the Pharmaserv system also promotes fraud on patients who were charged full co-pays on partially filled prescriptions.

McKESSON's fraudulent product, Pharmaserv, is a variation on a prohibited scheme previously abandoned by retail pharmacies such as CVS, Walgreens, Rite Aid and Eckerd. McKesson Corporation, through its Pharmaserv representatives, manipulates thousands of pharmacy owners in an attempt to hide behind their client's walls while they enjoy inflated profits. Consequently, Defendant's illegally obtained millions of dollars in increased annual profits through a management system they marketed and sold to unknowing pharmacies, who rely exclusively on their training protocol to overbill medications, thus violating the fraud and abuse laws enforceable under the False Claims Act.

4

## JURISIDICTION AND VENUE

1. This action arises under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*

2. This Court maintains subject matter jurisdiction over this action pursuant to 31 U.S.C. § 3732(a)(False Claims Act) and 28 U.S.C. §§ 1331 (Federal Question) because it arises under the laws of the United States.

3. This Court has personal jurisdiction over Defendant because Defendant systematically solicited business in the District of Pennsylvania by marketing and selling their Pharmaserv pharmacy management system to retail pharmacies and because the McKesson Corporate Office and Distribution center has sufficient minimum contacts in this judicial District that the exercise of such jurisdiction comports with traditional notions of fair play and substantial justice.

4. Pursuant to 28 U.S.C. § 1391, venue is properly laid in this judicial District because Defendant conducts substantial, systematic and continuous activity in this District and many of the transactions and/or occurrences underlying this action occurred in the City of Philadelphia.

5. In conjunction with the filing of this Complaint, the Relator has served a copy of the same upon the United States, together with a written disclosure statement setting forth and enclosing all material evidence and information possessed, pursuant to the requirements of 31 U.S.C. § 3730(b)(2).

6. Relator has complied with and/or will comply with all other conditions precedent to bringing this action.

7. Relator is the original source, and has direct and independent knowledge of, all publicly disclosed information on which any allegations herein might be deemed

based, and have voluntarily provided such information to the Government in conjunction with filing this complaint.

## PARTIES TO THE QUI TAM COMPLAINT

8.  The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

9.  Plaintiff Joseph John Urban Jr., Pharm.D. MBA, ("Relator Urban"), is a citizen of the United States of America and resides at 5 James Drive, Richboro, PA 18954. Relator Urban is an expert Pharmacy Consultant who specializes in Quality Assurance, Regulatory and Compliance Manufacturing and he has obtained his Doctor of Pharmacy and an MBA in Pharmaceutical Marketing.

10. Relator Urban has direct and independent knowledge of the information on which the allegations set forth in this Complaint are based.

11. Relator Urban's professional experience consist of a pharmacist at CVS, a Pharmacist at Walgreens, the Director of Quality Assurance at Alcan Pharmaceutical Packaging, the Senior Director and General Manager at ProClinical Pharmaceutical, and the Director of Clinical Supplies at RWJ-PRI (a division of Johnson and Johnson).

12. Relator Urban is an employee of UrbanCare Pharmacy, a retail pharmacy client of McKesson, and he attended McKesson's Pharmaserv training session based on his responsibility for dispensing medications, billing Medicaid and other government programs for payment of those medications dispensed to eligible Medicaid recipients, and sundry other responsibilities connected with the operation of a retail pharmacy.

13. Relator Urban is an instructor for Comprehensive Pharmacy Technician and Nursing Pharmacology Courses at Bucks County Community College and he has received numerous patents, publications, honors and awards for his work in the field.

14. Pursuant to Relator Urban's professional work and teaching experience, he is fully conversant in the applicable laws and regulations that govern the practice of retail pharmacy, specifically the False Claims Act.

15. Defendant McKesson Corporation, ("McKesson") is a publicly traded American healthcare company on the New York Stock Exchange and currently ranks 11th on the Fortune 500. McKesson is headquartered at One Post Street San Francisco, California 94104. Specifically, the McKesson Pharmacy System branch is headquartered at 30881 Schoolcraft Livonia, MI 48150.

16. McKesson is the largest healthcare services company in the nation and is the largest pharmaceutical distributor in North America with over 43,500 employees.

17. McKesson operates as a national pharmaceutical distribution company at the retail level, specializing in providing health information technology, medical supplies, equipment to pharmacies.

18. McKesson currently has 3 pharmacy management systems; Pharmaserv, PharmacyRx and EnterpriseRx, that are available for retail pharmacy owners.

19. Pharmaserv was developed in 1983.

20. Pharmaserv's primary function is to process prescriptions and submit them to third-party payers and reorder medication from McKesson warehouse.

21. It purports to streamline the dispensing of and drug ordering process with McKesson's drug wholesale division.

22. Pharmaserv also includes a Point-of-Sale component that coordinates cash registers functionality. This aspect of the software manages payment, returns and rebates for all pharmacy purchases.

23. Pharmaserv is design to consolidate pharmacy and front-of-store operations in one fully integrated package that directs inventory with automatic orders from McKesson's drug warehouse.

24. In 2014, McKesson's revenue totaled $137.6 billion.

## QUI TAM PROCEDURAL COMPLIANCE

25. Pursuant to §3730 (b)(2) of the Act, this Complaint is to be filed in camera and remain under seal for a period of at least sixty (60) days and shall not be served on the Defendant, McKESSON CORPORATION, until the Court so orders. The United States of America, acting by and through the Department of Justice, may elect to intervene and proceed with this action, within a period of sixty (60) days, after it has received both the Complaint and the statement of material evidence and information relating to the instant action.

26. Pursuant to §3730 (b)(2) of the Act, Relator Urban has provided to the Attorney General of the United States and to the United States Attorney for the Commonwealth of Pennsylvania, simultaneous with the filing of the instant Complaint, a statement of material evidence and information. The statement of material evidence and information supports Relator Urban assertion and contention regarding the submission of false claims by the Defendant, McKESSON CORPORATION, for

payment of prescription drugs by the third-party payer, Medicaid, Medicare, FEHB, TRICARE and other government programs, for eligible recipients.

## THE GOVERNING AUTHORITY

### The False Claims Act

27. The Civil False Claims Act ("FCA") is the government's primary civil remedy to redress false claims for government funds and property. False claims actions filed under the whistleblower, or *qui tam*, provisions allows private citizens to file lawsuits alleging false claims on behalf of the government.

28. The statute imposes liability on a defendant when: (1) the defendant presents (or causes to be presented) a claim for payment or approval; (2) the claim is false or fraudulent; and (3) the defendant's acts are undertaken "knowingly." For purposes of this statute, "knowingly" is not limited to "actual knowledge" but also includes deliberate ignorance or reckless disregard of truth or falsity. 31 U.S.C. §3729

29. The FCA prohibits the use of false records or statements to get a false or fraudulent claim allowed or paid under § 3729 (a)(2) and prohibits conspiracies "to defraud the government by getting a false or fraudulent claim allowed or paid" under § 3729(a)(3).

30. FCA claims include "any request or demand…for money or property" if any portion thereof comes from the federal government. § 3729(c).

31. The FCA states that person is liable if they "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and

improperly avoids or decreases an obligation to pay or transmit money or property to the Government" under § 3729(g)

32. Violators are subject to a civil penalty of $5,000 to $10,000 per claim, plus three times the amount of damages sustained by the government. § 3729(a).

## The Medicaid Program

33. The Congress of the United States, with the enactment of Title XIX of the Social Security Act of 1965, established the Medicaid programs. Title 42 U.S.C. §1396 et seq.

34. The Medicaid program was established by the federal government to create a means by which health care services could be provided to the indigent.

35. Though federally created, Medicaid is a joint Federal-State program wherein the federal government provides a significant share of the funding for the program.

36. At all times relevant to this Complaint, it was a violation of federal law, including Title 42 U.S.C.§1320a-7b(a)(1)(2), 1320a-7, 1320a-7a and 42 C.F.R. §1001.101(a)(1), to make false statements or representations of material facts with respect to requests for payment under Medicaid.

## The Medicare Act

37. The Medicare program was established in 1965 to provide health insurance for the elderly and disabled. Payments from the program are made through the Medicare Trust Fund, which is funded through payroll deductions taken from the work force in addition to government contributions. The current version of Medicare can be found at 42 U.S.C. § 1395

38. The Medicare program is administered through the U.S. Department of Health and Human Services and the Centers for Medicare and Medicaid Services ("CMS"), an agency within HHS.

39. Medicare has three parts, Part A, B and D.

40. Medicare Part A is categorized as "Hospital Insurance" and covers most medically necessary hospital, skilled nursing facility, home health and hospice care.

41. Medicare Part B is categorized as "Medical Insurance" and covers most medically necessary doctors' services, preventive care, durable medical equipment, hospital outpatient services, laboratory tests, x-rays, mental health care, and some home health and ambulance services.

42. Medicare Part D, which is categorized as "outpatient Prescription Drug Insurance," is the part of Medicare that provides prescription drug coverage and is only provided through private insurance companies that have contracts with the government. It is never provided directly by the government like the original Medicare is.

43. Administration of claims is effectuated through local Medicare carriers, who are responsible for processing the claims, determining coverage, and making payments form the Medicare Trust Fund.

## Other Federally Funded Health Insurance Programs

44. Federal health care programs include any plan or program that provides health insurance benefits directly or indirectly through insurance or otherwise funded directly in part or in whole by the United States government. 42 U.S.C § 1320a7b(f)(1). These include military benefits through the TRICARE program, the

Federal Employees Health Benefit Program, and other federally funded insurance (excluding federal workers compensation claims).

45. State Medical Assistance (Medicaid) programs are also federal health care programs. 42 U.S.C. §1320a-7b(f)(2).

## FACTUAL SETTING FOR THE QUI TAM COMPLAINT

46. The Defendant, McKESSON CORPORATION, is a pharmaceutical wholesale distributor to retail pharmacies, with adjunct services, such as providing health information technology, medical supplies and medical equipment to pharmacies.

47. McKESSON CORPORATION developed the Pharmserv system to be used by pharmacies to process medication orders prescribed by physicians to their patients.

48. The source of payment for the prescriptions processed through Pharmaserv came from cash-paying customers and third-party payers, which include the Medicaid, Medicare, FEHB, TRICARE and other government programs for eligible recipients.

49. McKESSON's Pharmaserv system has become an integral part of the delivery of prescribed medications in the health care system, through operating in approximately 1,538 retail pharmacies nationwide, including Pennsylvania.

50. Approximately 92 million prescriptions were processed through pharmacies utilizing Pharmaserv in 2014 (based on the total number of prescriptions filled in the United States in 2014 (4 billion) divided by the approximate 67,000 retail pharmacies nationwide).

51. McKESSON developed, marketed, promoted and sold the Pharmaserv retail pharmacy practice management system to its independent retail pharmacy clients, as an adjunct service to it's wholesaler business.

12

52. The costly Pharmaserv software, which McKESSON charges approximately $700 a month, was promoted as cutting edge and "re-designed in 2014."

53. Pharmaserv enabled independent pharmacies to: 1) process prescriptions and partially-filled prescriptions; 2) process third-party claims; 3) improve adherence to regulatory compliance and; 4) manage medication inventory levels through McKESSON's automated medication ordering system.

54. Upon presentation of a prescription to a retail pharmacy utilizing Pharmaserv, either by a customer in-person, as a result of a phone order by a patients' physician, or electronically through a third-party software, the pharmacist must identify the third-party payer to whom the bill for payment of the prescribed medication is to be directed.

55. If it is determined by the pharmacist that a third-party payer is to be billed for the prescription, the pharmacist will communicate with the identified third-party payer, via McKESSON's Pharmserv program, to obtain authorization for filling the prescription and to confirm payment for the prescription.

56. The method of communication used by the pharmacist, with computers running the through Pharmserv program, occurs via secure networks, with the third-party payers' software system.

57. Approval or denial of authorization by the third-party payer to the pharmacy, with respect to filling the prescriptions, normally occur within ten (10) seconds.

58. To initiate the above-described communication directly with the third-party payers, the pharmacy must utilize a unique numerical identification code, which has been assigned to each third-party payer.

13

59. When a prescription is processed for a Medicaid recipient, the unique numerical code transmitted by Pharmaserv for Medicaid recipients is 600428 for both adult and child patients.

60. In response to this transmission by Pharmaserv, Medicaid as well as other third-party payers, transmit an authorization back to the pharmacy to fill and dispense the medication(s), as prescribed to the identified customer. Medicaid, as well as other third-party payers also authorize payment of the cost of the complete prescription, as prescribed, to the pharmacy.

61. McKesson's Pharmaserv system also coordinates the replenishing of the dispensed medication by generating an order for McKesson's drug warehouse, that will customarily be shipping to the pharmacy between 1-3 days.

62. A retail pharmacy in undertaking to fill a prescription, pursuant to a physician's order, may on occasion not have a sufficient quantity of the medication in inventory to provide the customer with all that was prescribed. When this circumstance occurs, it is referred to within pharmacy work environment as being "short."

63. In the professional practice of pharmacy it is a common occurrence for pharmacists to be "short" when undertaking to fill prescription medications resulting in a situation referred to within the pharmacy work environment as a "partial-fill".

64. Based upon the observations, examinations, investigations and work experience by Relator Urban, prescriptions were "partially filled" approximately 5% to 10% of the time.

65. One reason for the frequent occurrences of being "short" medications, when filling and dispensing prescription medications, is that Pharmaserv affirmatively acts to have the individual pharmacies maintain a low inventory of products.

66. McKesson's Pharmaserv system prevents billing of partially-filled prescriptions, due to use of separate outdated billing algorithms in its programming. This has lead to high rates of over-billing of government funded third-party payers such as Medicaid.

67. When a pharmacy using the Pharmaserv system does not have a sufficient quantity to fill a prescription, the system attempts to dual bill the prescription plan for the partial amount and the remainder for a later date, simultaneously. This method yields a "transaction error", (also known as a claim-rejection,) from the prescription plan.

68. In response to these "transaction errors", McKesson has deployed a uniform training protocol across the over 1538 pharmacies using Pharmaserv, to manually circumvent the system. McKesson, fully aware of their system's limitations, has systemically instructed their Pharmaserv training representatives to teach pharmacists the banned "full bill, 2 label method" in processing partial-fills.

69. On July 2, 2015 the McKESSON CORPORATION's Pharmserv training representatives, Zeke Woodruff and Mike Rosser (referred to as "Representatives"), met with Relator Urban and provided training for the Pharmserv program.

70. The Representatives stated that retail pharmacies utilizing the McKESSON CORPORATION Pharmserv program have the ability to replenish their medication inventory daily through McKesson warehouses in the event of "shorted" prescriptions.

71. The Representatives informed Relator Urban, through their training protocol, of exactly how Phamaserv pharmacies must process prescription in the event that a medication is "short".

72. When the full amount is not available, pharmacies are specifically and uniformly told to utilize the "Bill Now" function, which submits a prescription claim for the full quantity to third-party payers.

73. When a prescription by a Medical recipient, as well as other third-party payers prescription is required to be filled "short," McKESSON's Pharmaserv training protocol, is to not pro-rate the price of the prescription for the quantity actually dispensed, but rather bill for the entire quantity.

74. In following this procedure only one charge is sent to the third-party payer, and that charge is for the full quantity of the medication prescribed.

75. When a third-party payer prescription is dispensed "short," no computer entry is noted by Pharmaserv in the customer's computer medical profile regarding the balance of medication owed the customer.

76. In dispensing a prescription "short" McKESSON's Pharmaserv training protocol directs its retail clients to rely on a manually created system to document which customers are owed a balance of medication due. This manual system is utilized by all McKESSON's Pharmaserv clients in a uniform manner.

77. The uniform method developed by McKESSON is to generate a second prescription label for the "short" prescription. The remaining balance of medication is to be written on the second label and placed in an "owe box" for the pharmacist to fill once Pharmaserv has automatically ordered the medication from McKesson's warehouse.

78. At the cash register, the pharmacist uses the first prescription label to charge patients the full co-pay for the partially-filled prescription.

79. It is the responsibility of the individual customer to return to the retail pharmacy or make arrangements to get the balance owed at a later date.

80. Based upon the work experience of Relator URBAN, within retail pharmacies for over 30 years practice as a Pharmacist, about 20% to 40% of all "short" prescription balances, as held in the "owe box," were not picked up by the previously "shorted" customer.

81. Those prescription medications held in the "owe box" by the retail pharmacy, which constitutes the balance owed a customer from a prior "partially-filled" prescription, if not picked up in a reasonable time frame, generally 14 to 28 days, are placed back in inventory for sale with no charge back to Medicaid or another third-party payer. Documentation with respect to the identity of the customer and the amount of medication owed the customer is then discarded.

82. The Pharmserv system does not require nor provide a means by which the pharmacist can credit the third-party payer with a refund for those prescription medications which were previously billed and paid for but subsequently returned to inventory as a result of a customer failing to pick up the balances of a "short" prescription.

83. McKesson promoted a platform that automatically reordered medications from their warehouse after requiring pharmacies to bill full quantities for partially-filled prescriptions.

84. The Pharmaserv system also promotes fraud on patients who were charged full co-pays on partially-filled prescriptions.

85. While many pharmacies who purchased the Pharmaserv program were operating under mistake of fact and without knowledge of the partial-fill fraud, it is believed that up to 50% were aware of the illegality of billing Medicaid and other plans 100% on partial-fills prior to dispensing to entire amount.

86. While many pharmacies who purchased the Pharmaserv program were operating under mistake of fact and without knowledge of the partial-fill fraud, up to 50% also returned medication back into stock without reimbursing Medicaid or other plans.

## FIRST CAUSE OF ACTION

[False Claims Act, Title 31 U.S.C. §3729(a)(1)]

87. Plaintiff adopts and reiterates all the facts alleged in paragraph one through 86, as fully and completely as if they were incorporated herein verbatim.

88. The Defendant, McKESSON CORPORATION, acting through its Pharmaserv training representatives, caused Pharmaserv users to submit false and fraudulent claims for payment of prescription medications, by monies from the Medicaid, Medicare FEHB, TRICARE, and other government program, each time it submitted a claim for the full prescription but directed pharmacies to furnish the recipient only a portion of the prescription medication due to a lack of a full inventory of the medication as prescribed.

89. Based upon these false and fraudulent submissions of claims, the Defendant, McKESSON CORPORATION, received monies paid to it through its third-party processing and synchronized warehouse ordering by the United States Government thru the Medicaid, Medicare, FEHB, TRICARE and other government programs.

90. As a result of the acts described above, the Defendant, McKESSON CORPORATION, has knowingly presented or caused to be presented to the United States Government through the Medicaid, Medicare, FEHB, TRICARE and other government programs false or fraudulent claims for payment or approval in violations of the False Claims Act, as amended, Title 31 U.S.C. § 3729(a)(1).

## SECOND CAUSE OF ACTION

[False Claims Act, Title 31 U.S.C. §3729(a)(2)]

91. Plaintiff adopts and reiterates all of the facts alleged in paragraphs one through 90, as fully and completely as if they were incorporated herein verbatim.

92. In performing the acts hereinbefore set out the Defendant, McKESSON CORPORATION, through the acts of its employees and retail pharmacy clients, knowingly made, used, or caused to be made or used, false records or statements to get false or fraudulent claims paid or approved by the United States Government, which caused monies from the Medicaid, Medicare, FEHB, TRICARE and other government programs to be paid directly and surreptitiously to McKESSON CORPORATION thereby damaging the Treasury of the United States of America.

93. As a result of the acts described above, the Defendant, McKESSON CORPORATION, has knowingly made, used, or caused to be made or used false records or statements to get false and fraudulent claims paid or approved by Medicaid, Medicare, FEHB, TRICARE and other government programs in violation of the False Claims Act, as amended, Title 31 U.S.C. §3729(a)(2).

## THIRD CAUSE OF ACTION

[Payment Under Mistake of Fact]

94. Plaintiff adopts and reiterates all of facts alleged in paragraphs one through 93, as fully and completely as if they were incorporated herein verbatim.

95. Plaintiff submits that McKESSON CORPORATION's executives, management, and training representatives were aware of the fraudulent acts as hereinbefore set out, specifically, the billing of third-party payers for payment of full and/or complete prescriptions, when a prescription was actually filled "short." Relator Urban submits that in mid-July, McKESSON CORPORATION's management contacted another pharmacist at UrbanCare Pharmacy via telephone and confirmed their awareness of the illegality of this issue. This billing policy resulted in the McKESSON CORPORATION receiving a greater amount of money than they were entitled to.

96. The McKESSON CORPORATION in utilizing this billing procedure, was receiving monies, by and through the Medicaid, Medicare, FEHB, TRICARE and other government program, wherein many of their retail pharmacy clients, who were operating on the mistaken belief that all prescriptions filled and dispensed through Pharmaserv were in compliance, because of their training by McKESSON.

97. As a result, the Medicaid, Medicare, FEHB, TRICARE and other government programs paid monies through pharmacies utilizing Pharmaserv to the McKESSON CORPORATION to which they were not entitled, thereby damaged the Treasury of the United States of America.

## FOURTH CAUSE OF ACTION

### [Unjust Enrichment]

98. Plaintiff adopts and reiterates all of the facts alleged in paragraphs one through 97, as fully and completely as if they were incorporated herein verbatim.

99. Plaintiff submits that in performing the acts hereinbefore set out, the Defendant, McKESSON CORPORATION, through the acts of their employees and retail pharmacy clients, caused monies to be paid by and through the Medicaid, Medicare, FEHB, TRICARE and other government programs for which the United States received no benefit and to which McKESSON CORPORATION was not entitled.

100. By reason of these payments the Defendant, McKESSON CORPORATION, has been unjustly enriched at the expense of the Treasury of the United States of America.

101. The Plaintiff is entitled to damages in the amount the Defendant, McKESSON CORPORATION, was unjustly enriched.

## FIFTH CAUSE OF ACTION

### [Public Health Service Act, Title 42 U.S.C. 1320a-7b]

102. Plaintiff adopts and reiterates all of the facts alleged in paragraphs one through 101, as fully and completely as if they were incorporated herein verbatim.

103. Plaintiff submits that in performing the acts hereinbefore set out, the Defendant, McKESSON CORPORATION, through their Pharmaserv system and deceptive training protocol knowingly and willfully made or caused to be made false statements or representation of material facts under Medicaid and other government programs in order to benefit to which McKESSON CORPORATION was not entitled.

104.   Based upon these false and fraudulent submissions, the Defendant, McKESSON CORPORATION, received monies paid to it by the United States Government thru the Medicaid program.

105.   As a result of the acts described above, the Defendant, McKESSON CORPORATION, has knowingly presented or caused to be presented to the United States Government through the Medicaid program false or fraudulent statements to get false or fraudulent claims paid or approved by the Medicaid program in violation of 42 U.S.C. § 1320a-7b. The United States is entitled to all claims for this conduct under the provision for permissive exclusion from Medicaid and other health care programs.

**SIXTH CAUSE OF ACTION**

[Public Health Services Act, Title 42 U.S.C. § 1320a-7a]

106.   Plaintiff adopts and reiterates all of the facts alleged in paragraphs one through 105, as fully and completely as if they were incorporated herein verbatim.

107.   Plaintiff submits that in performing the acts hereinbefore set out, the Defendant, McKESSON CORPORATION, knowingly presented or caused to be presented to Medicaid and other government programs a claim for fully filled prescriptions on partially filled prescriptions that resulted in a greater payment to McKESSON CORPORATION than that is applicable to the prescription actually provided.

108.   The McKESSON CORPORATION, based upon the improperly filed and fraudulent presentation of claims as described above, received monies paid to it by the United States Government through the Medicaid program and must pay civil monetary penalties pursuant to the Act.

## SEVENTH CAUSE OF ACTION

[CHAMPUS Title 32 C.F.R. 199.9]

109.   Plaintiff adopts and reiterates all of the facts alleged in paragraphs one through 108, as fully and completely as if they were incorporated herein verbatim.

110.   The Defendant, McKESSON CORPORATION, acting through its employees, caused to be submitted false and fraudulent claims for payment of prescription medications, by monies from the TRICARE program, each time a pharmacy using the Pharmaserv system submitted a claim for the full prescription but furnished the TRICARE recipient only a portion of the prescription medication due to a lack of a full inventory of the medication as prescribed.

111.   Based upon these false and fraudulent submissions of claims, the Defendant, McKESSON CORPORATION, received monies paid to it by the United States Government thru the TRICARE program.

112.   As a result of the acts described above, the Defendant, McKESSON CORPORATION, has knowingly presented or caused to be presented to the United States Government through the TRICARE program false or fraudulent claims for payment or approval in violation 32 CFR §199.9.

## EIGHT CAUSE OF ACTION

[FEHBP Administrative Sanctions, Title 5 U.S.C § 8902a]

113.   Plaintiff adopts and reiterates all of the facts alleged in paragraphs one through 112, as fully and completely as if they were incorporated herein verbatim.

114.   Plaintiff submits that in performing the acts hereinbefore set out, the Defendant, McKESSON CORPORATION, through their Pharmaserv system and deceptive

training protocol knowingly and willfully made or caused to be made false statements or representation of material facts under FEHBP and other government programs in order to benefit to which McKESSON CORPORATION was not entitled.

115.    Based upon these false and fraudulent submissions, the Defendant, McKESSON CORPORATION, received monies paid to it by the United States Government thru the FEHBP program.

116.    As a result of the acts described above, the Defendant, McKESSON CORPORATION, has knowingly presented or caused to be presented to the United States Government through the FEHBP program false or fraudulent statements to get false or fraudulent claims paid or approved by the FEHBP program in violation of 5 U.S.C. § 8902a. The United States is entitled to all claims for this conduct under the provision for permissive exclusion from FEHBP and other health care programs.

## NINTH CAUSE OF ACTION

[Records & Reports, Title 21 U.S.C.A § 801, et seq.]

117.    Plaintiff adopts and reiterates all of the facts alleged in paragraphs one through 116, as fully and completely as if they were incorporated herein verbatim.

118.    McKESSON CORPORATION failed to maintain proper records under the Control Substance Act.

119.    Plaintiff submits that in performing the acts hereinbefore set out, the Defendant, McKESSON CORPORATION, knowingly caused prescriptions records to be improperly submitted and recorded on partially-filled prescriptions that were processed through Pharmaserv.

120.   As a result of the acts described above, The McKESSON CORPORATION, based upon the improperly filed records including CDS, must pay administrative civil and criminal monetary penalties pursuant to the Act.

## TENTH CAUSE OF ACTION

[Pennsylvania False Claims Act, Title 62 P.S. 1407, et seq.]

121.   Plaintiff adopts and reiterates all the facts alleged in paragraph one through 120, as fully and completely as if they were incorporated herein verbatim.

122.   The Defendant, McKESSON CORPORATION, acting through its Pharmaserv training representatives, knowingly and/or intentionally caused Pharmaserv users to submit false and fraudulent claims for payment of prescription medications, by monies from the Medicaid, each time it submitted a claim for the full prescription but directed pharmacies to furnish the recipient only a portion of the prescription medication due to a lack of a full inventory of the medication as prescribed.

123.   Based upon these false and fraudulent submissions of claims, the Defendant, McKESSON CORPORATION, received monies paid to it through its third-party processing and synchronized warehouse ordering by the Commonwealth of Pennsylvania through the Medicaid.

124.   As a result of the acts described above, the Defendant, McKESSON CORPORATION, has knowingly presented or caused to be presented to the Commonwealth of Pennsylvania through the Medicaid false or fraudulent claims for payment or approval in violations of the Pennsylvania's False Claims Act, Title 62 P.S. 1407, et seq.

## DAMAGES

125.   The number of false and fraudulent claims submitted by pharmacies utilizing the McKESSON CORPORATION Pharmaserv Software as set forth in the instant Complaint, and the amount of monies wrongfully obtained as a result of the false and fraudulent claims, waste and abuse, can only be approximated.

126.   The Relator URBAN submits that to assess the approximate dollar value of the fraud experienced by the Medicare, Medicaid, FEHB, TRICARE and other government programs, in the year 2015, as a result of the billing procedure and software coding of Pharmaserv by the McKESSON CORPORATION with respect to "partially filled" prescriptions and voided transactions, the following information is reasonably relied upon:

    a.   In the United States of America, there are approximately 67,000 retail pharmacies, filling a combined 4 billion prescriptions in 2014 (Kaiser Family Foundation).

    b.   Of those 67,000; McKESSON CORPORATION representative Naomi stated that as of July 30, 2015, 1,538 pharmacies utilize the Pharmaserv system.

    c.   Therefore, approximately 92,000,000 prescriptions were filled in 2014 using the McKESSON CORPORATION Pharmaserv software.

    d.   Based upon Relator URBAN'S work experience and ownership of UrbanCare Pharmacy, he estimated that 5% to10% of all prescriptions are filled "short;"

    e.   Therefore, approximately 4,600,000 to 9,200,000 prescriptions filled through the Pharmaserv system, during the past year, were filled and dispensed "short."

f.  Based upon Relator URBAN'S work experience; he estimates that 90% of prescriptions constitute third-party payers.

g.  Therefore, 90% of the prescriptions being filled "short" and paid for through a third-party payer, totaled 4,100,000 to 8,200,000 during the past fiscal year;

h.  The Medicaid, Medicare, FEHB, TRICARE and other government programs, as a third-party payer, constitutes approximately 33.3% of all third-party payer prescriptions;

i.  Therefore, the number of Medicaid, Medicare, FEHB, TRICARE, and other government programs third-party payer prescriptions filled "short" through the Pharmaserv system by McKESSON CORPORATION for the past fiscal year totaled between 1,350,000 and 2,700,000.

127.  Relator URBAN submits that with from 1,350,000 to 2,700,000 false and fraudulent claims being submitted by the Defendant, McKESSON CORPORATION, for payment by and/or through the Medicaid, Medicare, FEHB, TRICARE and other government programs, McKESSON CORPORATION, has wrongfully received and retained Medicaid, Medicare, FEHB, TRICARE and other government program's monies, which has damaged the Treasury of the United States of America.

128.  Based upon the statutory civil penalty of not less than Five Thousand Dollars ($5,000.00) and not more than Ten Thousand Dollars ($10,000.00) for each violation of Title 31 U.S.C. §3729, Relator URBAN submits that the statutory civil penalty which can be assessed against the Defendant, McKESSON CORPORATION, can fall within the range of $6,870,000,000.00 to $27,510,000,000.00 for each year in which

the defendant, McKESSON CORPORATION, submitted and caused to be submitted false and fraudulent claims for full prescriptions which were in fact filled "short;"

j.  An estimate of the gross pharmacy sales for the past fiscal year, for all prescriptions filled through pharmacies utilizing McKESSON CORPORATION Pharmaserv is $5,940,000,000.00; based upon total prescription sales in the United States ($259,092,876,285) divided by the approximate 67,000 retail pharmacies times 1,538 pharmacies utilizing the system.

k.  The Relator URBAN, based upon his work experience submits that the frequency with which prescriptions are filled "short" is approximately 5% to 10%;

l.  Therefore, 5% to10% of the total gross pharmacy prescriptions for the past fiscal year, $5,940,000,000, which were sold "short" amounted to $297,000,000 to $594,000,000;

m.  Third-party payer prescriptions constitute approximately 90% of all prescriptions filled;

n.  Therefore, with 90% of all prescriptions being paid through a third-party payer, the total amount of pharmacy sales which were sold "short" amounted to $267,500,000 to $535,200,000.00;

o.  The Medicaid, Medicare, FEHB, TRICARE and other government programs, as a third-party payer, constitutes approximately 33.3% of all third-party payer prescriptions;

p.  Therefore, with 33.3% of all third-party payer prescriptions being paid for through the Medicaid, Medicare, FEHB, TRICARE and other government programs, through the Pharmaserv software by McKESSON CORPORATION totaled from $89,000,000 to $178,000,000.00.

q.  The average prescription price, based upon available data for national retail pharmacies, is $65.00;

r.  Assume that all prescriptions filled and dispensed, as "short," and billed through the Pharmaserv system, to third-party payers during the last fiscal year, fail to contain 20% of the prescription medications;

s.  Therefore, all prescriptions filled and dispensed as "short" are, on a pro-rata basis, over billed to the third-party payer by one-fifth the actual cost of the prescription;

t.  Therefore, using the national average prescription price of $65.00, the Medicaid, Medicare, FEHB, TRICARE and other government programs as a third-party payer, is being overcharged $13.00 for every "short" prescription dispensed through the Pharmaserv software;

u.  The number of Medicaid, Medicare, FEHB, TRICARE and other government programs third-party payer prescriptions filled "short" through the Pharmaserv software, for the past fiscal year totaled from 1,350,000 to 2,700,000;

v.  Therefore, the dollar amount that the Medicaid, Medicare, FEHB, TRICARE and other government programs has paid pharmacies and the McKESSON CORPORATION through the Pharmaserv software, for "short" prescriptions

which have been billed as if dispensed complete, totals from $17,550,000.00 to $35,100,000.00.

w.  The Medicaid, Medicare, FEHB, TRICARE and other government programs though funded by both the Federal and State governments is administered by the individual states;

x.  Assuming that the Federal governments share of the Medicaid, Medicare, FEHB, TRICARE and other government programs funding amounts to 50% within a given State, the Federal government has thereby sustained a loss of $6.50 with respect to each false and fraudulent prescription claim submitted through McKESSON CORPORATION's Pharmaserv software.

129.  Relator URBAN submits that based upon the reasonable assessment that 1,350,000 to 2,700,000 false and fraudulent prescription claims were submitted through the Medicaid, Medicare, FEHB, TRICARE and other government programs by pharmacies using McKESSON CORPORATION's Pharmaserv the sum total of damages to the United States Treasury amounts to $8,775,000 to $17,550,000.00.

130.  Relator URBAN submits that the Defendant, McKESSON CORPORATION, in the years prior to 2015, specifically, 2011-2015, submitted false and fraudulent prescription claims through the Medicaid, Medicare, FEHB, TRICARE and other government programs, utilizing the same means and methods as described in the instant complaint for the year 2015.

131.  Relator URBAN, individually and on behalf of the United States of America, demands that the Defendant, McKESSON CORPORATION, be required to make full restitution to the United States of America of all monies wrongfully expended by the

Federal Government in general, and the Medicaid, Medicare, FEHB, TRICARE and other government programs in particular for all applicable years.

### Claim for Relief

132.   As described in this Qui Tam Complaint, Defendant, by and through its officers, agents, and employees: (i) knowingly presented, or caused to be presented, to the United States Government, a false or fraudulent claim for payment or approval; (ii) knowingly made, used, or caused to be or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government.

133.   Defendant authorized and ratified all the violations of the False Claims Act committed by its various officers, agents, and employees.

134.   The United States Government and the public have been damaged as a result of Defendant violations of the False Claims Act.

135.   Relator(s) collectively request a jury trial on all issues so triable.

136.   **WHEREFORE,** Relator(s), on behalf of themselves, and the United States Government, prays that this Court enter an Order providing that:

    A.   This Court enter a judgment against Defendant in an amount equal to three times the amount of damages the United States has sustained as a result of the Defendant's violations of the False Claims Act;

    B.   That this Court enter a judgment against Defendant for a civil penalty of not less than Five Thousand Dollars ($5,000.00) and not more than Ten Thousand Dollars ($10,000.00) for each of Defendants' violations under the False Claims Act Title 31 U.S.C. §3729;

C. Relator(s) recover all costs of this action, with interest, including the cost to the United States Government for its expenses related to this action;

D. Relator(s) be awarded all reasonable attorneys' fees in bringing this action;

E. In the event the United States Government proceeds with the False Claims Action, Relator(s) be awarded an amount for bringing this False Claims Act action of at least 15% but not more than 25% of the proceeds of this False Claims Act action;

F. In the event the United States Government does not proceed with the False Claims Act action, Relator(s) be awarded an amount for bringing the False Claims Act action of at least 25% but not more than 30% of the proceeds of the False Claims Act action

G. Relator(s) be awarded pre-judgment interest;

H. A trial by jury be held; and

I. Relator(s) and the United States of America receive any and all relief to which either or both may be entitled at law or in equity.


Respectfully submitted,

**KANE AND ASSOCIATES, LLC**

By: _____

David C. Kane, R.Ph., Esq.
1500 John F. Kennedy Blvd, Suite 820
Philadelphia, PA 19102


Dated: September 15, 2015